## SUPREME COURT.

### ELIZABETH T. P. BEACH, administratrix, &c., respondent, agt. THE BAY STATE STEAMBOAT COMPANY, appellants.

The statutes of 1847 and 1849, giving an action for causing death, were intended to regulate the conduct of corporations, their agents, engineers, &c., and of other persons, whilst operating or being *in this state only.*

Where the acts, neglect, and default complained of, which resulted in death, occurred out of this state, and within the jurisdiction of another state, although the plaintiff, as administratrix of the deceased, resided in this state—*held,* that these statutes (1847–9) did not intend to make those acts, neglect, and default the subject of the civil remedy given by them here; therefore the complaint showed no cause of action under these statutes—*(reversing the decision in this same case at special term,* 16 *How.* 1).

It is not to be presumed that the legislature intended, for the purposes of the civil remedy, to include any acts, neglects, or defaults, not intended to be the subjects of the criminal proceeding mentioned in these statutes. These acts, which create the remedy for the benefit of the widow and next of kin, *also create the wrong as to them.*

The common law gives a remedy for personal injuries or torts, whether direct or consequential. A party who has suffered a personal injury or tort in another state, and comes here, brings with him his cause of action, and can recover here, upon the presumption that the common law prevails in such other state, and he could have recovered there had the action been brought there. But there is no such presumption arising upon a special statute giving a remedy unknown to the common law.

*New-York General Term, December,* 1859.

*Present,* ROOSEVELT, CLERKE *and* SUTHERLAND, *Justices.*

THIS action is brought under the acts of 1847 and 1849, to recover damages resulting from the death of John C. Beach, caused by an explosion or escape of steam on board the defendants' steamboat, the Empire State, while on her passage from Fall River to the city of New-York, the said John C. Beach being a passenger on board of said boat.

The complaint alleges that the said John C. Beach was, at the time, a resident of the city of New-York; that the defendant is a corporation of Massachusetts; that the deceased paid

his fare and took passage at Fall River for New-York; and that the explosion or escape of steam, which caused the death, took place through the wrongful act, neglect, and default of the defendants and their agents and servants.

The defendants demurred to the complaint substantially upon the ground that it is not alleged in the complaint, nor does it appear therefrom, that the act or acts complained of occurred within the state of New-York.

The judge at special term, in deciding the demurrer, assumed that the death, and disaster occasioning it, did not take place within the state of New-York; he, nevertheless, held that the action was well brought, and overruled the demurrer. (*See* 16 *How.* 1.)

DANIEL LORD, *for appellants.*
THOMAS H. RODMAN, *for respondent.*

By the court—SUTHERLAND, Justice. I think it is to be assumed, in deciding whether the demurrer is well taken, as was done by the judge at special term, that the explosion and death did not occur within the state of New-York.

If the place is material, and the pleading is ambiguous as to the place, the presumption should be against the party whose pleading it is. (*Cruger* agt. *Hudson River Railroad Co.*, 2 *Ker. R.* 201.)

It necessarily results from the independent sovereignty of different states or nations, that the laws of one state or nation can have no force or effect without its own territorial limits, and within the territory of another state or nation, without the consent of the latter. Sovereignty is exclusive and absolute, except so far as it may be qualified by treaty or consent. If the legislatures of two states or nations could pass laws for each other, to be enforced, *proprio vigore*, within the territorial limits of each other, both nations would instantly cease to be sovereign. The passage of laws is the highest act of sovereignty. Each independent nation or country has the same right to pass laws. It necessarily follows, that the laws of a

state or country " can have no intrinsic force *proprio vigore*, except within the territorial limits and jurisdiction of that country." (*Story's Confl. Laws*, §§ 7, 8.)

In the United States, the sovereignty of the several states is modified by the constitution of the United States adopted by them, but, irrespective of the constitution of the United States, the several states are independent sovereignties with respect to each other and other countries, and the foregoing principle of the territorial limitation of legislative power or jurisdiction applies to them.

The well-known distinction between the *lex loci contractus* and the *lex fori*, and between transitory and local actions, taken and recognized in construing and enforcing laws, assumes and is founded on this state or national territorial legislative limitation. (4 *Cowen R.* 510, *note*.)

Personal injuries or torts are transitory, *et sequunter forum rei*. (*Rafael* agt. *Develst*, 2 *W. Blackstone R.* 1058; *Mostyn* agt. *Fabrigas*, *Cowper R.* 161–176.)

A party who has suffered a personal injury or tort in another country or state, and comes here, brings with him his cause of action for the injury or tort, and, if he finds the party who committed the injury or tort in such other country or state here, can sue him here; but it is presumed that, in ordinary cases, he can do so only upon the ground that he brought his cause of action with him; that is, that the act or acts of the defendant, by which the injury or wrong was effected, were unlawful when and where committed; in other words, that the injury or tort complained of here was an injury or tort by the law of the country or state when and where committed.

In such cases, the courts of one country or state give a remedy upon the principle of comity for personal injuries and wrongs suffered in another; but they must be injuries or wrongs by the law of the state or country in which they were suffered.

The common law gives a remedy for personal injuries or torts, whether direct or consequential. In actions brought here for injuries or torts committed in another country or

state, where the common law is presumed to prevail, the court here gives the common-law remedies for such injuries and torts, upon the presumption that the common law does prevail in such other country or state, and, therefore, that the plaintiff had a right of action or remedy there, for the injury or tort committed there.

To apply this principle to this case: if the explosion took place in the state of Massachusetts, and John C. Beach, the deceased, had survived the injuries, and had brought his action here, against any of the defendants' agents or servants, through whose default or neglect the explosion occurred, whom he could find here, he could have recovered here, upon the presumption that the common law does prevail in Massachusetts, and because, the common law prevailing in Massachusetts, he could have recovered there, had the action been brought there.

But John C. Beach did not survive the injuries; and this action is brought by his personal representative, under special acts of the legislature of this state, giving a right of action or remedy unknown to the common law, not for the injuries suffered by John C. Beach, but for the damages and pecuniary injuries resulting from his death, suffered by his widow and next of kin; damages and injuries not the subject of judicial cognizance or of legal redress by the common law; and for which, therefore, it is to be presumed, no action could be brought in Massachusetts.

It is quite immaterial whether those sections of the acts, giving this right of action, are penal or remedial.

The remedy, in fact, is an extraordinary one, unknown to the common law, created by the acts, for damages or injuries also created by the acts; for, in a legal or judicial sense, damages or injuries, for which there is no legal redress or remedy, are not damages or injuries. These acts, which create the remedy for the benefit of the widow and next of kin, *also create the wrong as to them.*

Assuming that the wrongful act, neglect or default, explosion and death, took place in Massachusetts, in the absence of

any law of that state giving a remedy to the widow and next of kin, or for their benefit, in a legal sense they cannot be said to have suffered any wrong or injury from the act, neglect, or default, &c., unless the acts of this state, under which this action is brought, extended into and were in force in Massachusetts; for act or acts complained of as tortious and wrongful must be tortious and wrongful when and where committed; at all events, neither the return of the agents or servants of the defendants, through whose neglect or carelessness the explosion took place, into this state, nor the voluntary appearance of the defendants in this action, would make the act or acts committed in Massachusetts originally tortious, or give the widow and next of kin of the deceased the benefit of the remedy provided for by the acts of 1847 and 1849.

The learned judge, who decided this demurrer at special term, commences his opinion by saying, " It cannot be denied that one state or nation has a right to give its citizens redress for any personal injury committed without as well as within its territorial limits, when it obtains jurisdiction over the wrong-doer. This has always been recognized as the common law. Many, if not most of the actions instituted in our courts of justice are transitory and not local; and if the cause upon which any one of them is founded arose in Japan, it would be just as tenable as if it arose in the state of New-York."

I think the question raised by the demurrer in this case is not a question of legislative power, but a question of interpretation.

It is not a question as to the power of the legislature which passed the acts of 1847 and 1849, but as to the intent of the legislature in passing them. The question is not, whether the court has jurisdiction of the parties and of the cause of action, assuming the action to be for an injury or tort committed in Massachusetts, or without the political jurisdiction of the state; but the question is, whether the act or acts complained of, which caused the death of John C. Beach, and thus, consequentially, the alleged damages for which the action is brought, were tortious by *these acts of the legislature of this state*, and did

Beach agt. The Bay State Steamboat Company.

or could, in a legal sense, cause any damage or injury *to the widow and next of kin*, for which an action can be brought *under these acts of the legislature of this state*, assuming that the act or acts, negligence or default, complained of as causing the death of John C. Beach, were committed or occurred in Massachusetts, or out of this state, and within the jurisdiction of another state. In other words, I think the question raised by the demurrer is, whether it appears, from the complaint, that the plaintiff has a cause of action under the acts of 1847 and 1849? not whether the legislature of this state could have given him one; or, if he has one, whether the court has jurisdiction of it.

Now, it is very clear, that the general proposition stated in the opinion of the learned judge at special term, that a state or nation has a right to give its citizens redress for injuries committed without as well as within its territorial jurisdiction, where it obtains jurisdiction over the wrong-doer, however true, has little or no bearing on the question in this case, viewing that question as one merely of the interpretation of the acts of 1847 and 1849. Indeed, the learned judge, by stating that proposition, and the other immediately following it as to transitory actions, as bearing on the question in this case, would appear, at the very commencement of his opinion, to have assumed that the act or acts, negligence or default, complained of, as causing consequentially the injury and damages to the widow and next of kin, for which the action is brought, were tortious and did cause such injury and damages, under and by force of these special acts of the legislature of New-York; the very question in the case being, as I have before stated, whether the act or acts, &c., having been committed out of this state, and within another state, were, or could be tortious under and by force of these statutes of New-York, or did or could cause any injury or damage to the widow and next of kin, for which a remedy was intended to be given by these statutes.

"Every nation has an exclusive right to regulate persons and things within its own territory." (*Story's Confl. Laws*, § 22.)

Beach agt. The Bay State Steamboat Company.

Irrespective of written constitutions, and of limitations which may be implied from the formation and frame of the government, the legislature of a state may be said to have sovereign power over persons and things within its territory. It would have the power of preventing foreigners, who had committed certain acts in their own country, from coming into the state. It would have power to prevent citizens of the state, who had committed certain prohibited acts in another country, from returning to the state.

If the legislature of this state should do so extraordinary a thing, as to pass a law giving the personal representatives of an Englishman, or of a Frenchman, who had been killed in a duel in his own country, a right of action here against the party killing him, for damages for the benefit of the widow and next of kin of the deceased, such law could of course only be enforced against the person, or property of the person committing the act, if he should happen to come into the state, or have property here; but if the party committing the act should choose to come into this state, and should be sued under the act, it would be difficult to say that the case would necessarily present a question of jurisdiction for the court.

Laws of this description, undertaking, in a certain way, to regulate the conduct of foreigners in their own country, under the penalty of being enforced on their coming into the country passing the laws, might present questions of war, but could not very well present questions of jurisdiction.

A nation may undertake to regulate by law the conduct of its citizens while abroad in another country, to be enforced on their return to their own country, but such laws are really consistent with the almost self-evident proposition, that the laws of one nation or state can have no force in the territory of another, without the consent of the latter. As a state or nation " has an exclusive right to regulate persons and things within its own territory " only, it is to be presumed, whatever power it may have to regulate the property and conduct of its citizens in the territory of another state or nation with the consent of the latter, or to be enforced only on persons and

property within its own jurisdiction, that its laws are and were intended to be regulations for persons and things within its own territory only.

There is nothing in these acts of 1847 and 1849 which shows that they were intended to protect the lives of its citizens while out of the state—nothing to show that they were intended to extend to act or acts, neglects or defaults, committed or suffered in another state.

It must be presumed, I think, as the result of the general principles of the territorial limit of political jurisdiction, and of the force of laws before adverted to, that the statutes were intended to regulate the conduct of corporations, their agents, engineers, &c., and of other persons, whilst operating or being in this state only.

If a citizen of this state leaves it, and goes into another state, he is left to the protection of the law of the latter state.

One section of the law of 1849 is highly penal.

For the same wrongful act, neglect, or default, for which the statutes give the civil remedy to the personal representatives of the deceased, for the benefit of his widow and next of kin, the statute of 1849 renders the party who commits the act, &c., liable to indictment and imprisonment in a state prison.

Penal actions and proceedings are strictly local.

Can it be presumed that the legislature intended, for the purposes of the civil remedy, to include act or acts, neglects or defaults, not intended to be the subjects of the criminal proceeding?

Upon the whole, it is quite clear to me, that it was not intended by these statutes to make the act or acts, neglect or default, complained of in this case, which it must be assumed occurred out of this state and within the jurisdiction of another state, the subject of the civil remedy given by the statutes; and that therefore the complaint in this case does not show any cause of action under these statutes; and that the judgment at special term should be reversed; and that the defendants should have judgment on the demurrer.