It cannot be well questioned that at common law and without the aid of this statute, no action could be maintained by any one for the damages sustained by the death of the plaintiff's intestate. *Page 476 
The action which the law gave him, was for the injuries to his person, and the statute contemplates that no action can be maintained under it, but such as the deceased himself, if he had survived could have maintained. But all claims for injuries to his person, were extinguished by his death. "Actio personalis,moritur cum persona," is one of the most familiar maxims in the law. (Broom's Legal Maxims, 400, 401; Chitty Pl., 68, 69, preamble to stat., 9 and 10 Vict., ch. 93, p. 531; Carey v.The Berkshire Railroad Company, 1 Cush., 475; Pack v. TheMayor, c., of New York, 3 Comst., 493; in which the case in 20 Wend., 210, is disapproved; Higgins v. Butcher, 1 Brown., 205; Stafford v. Drew, 12 N.Y. Leg. Obs., May, 1854, p. 150;Warley v. Cincinnati, Hamilton and Dayton Railroad Company, 1 Handy's [Ohio] R., 481; Lucas v. The New York Central RailroadCompany, 21 Barb., 245; Greene v. River Railroad Company,
28 id., 9; 14 B. Mun., 204.)
It would seem to be clear, therefore, that at common law, no action could be maintained for damages to the person of the deceased, or for damages which the widow and next of kin sustained by reason of his death, in the name of the personal representatives or otherwise. An action cannot be maintained by an executor or administrator for a breach of promise of marriage made to the deceased, when no special damage is alleged. (Chamberlain v. Williamson, 2 Maule Sel., 409.) Lord ELLENBOROUGH, in delivering the opinion of the Court in this case, says, that the action was novel in its kind, and not any one instance was cited or suggested in the argument of its having been maintained, nor have we been able to discover any by our own researches and inquiries, and yet frequent occasion must have occurred for bringing such actions. He says the general rule of law is, that actio personalis moritur cum persona, under which rule are included all actions for injuries merely personal. That executors and administators are the representatives of the temporal property, that is of the debts and goods of the deceased, but not of their wrongs, except where those wrongs operate to the temporary injury of their personal estate. That if this action could be maintained *Page 477 
then every action founded on an implied promise to a testator, when the damage subsists in the previous personal suffering of the testator, would also be maintainable by the executor or administrator. All injuries affecting the life or health of the deceased, all such as arise out of the unskillfulness of medical practitioners, the imprisonment of the party brought on by the negligence of his attorney, all these would be breaches of the implied promise by the persons employed, to exhibit a proper portion of skill and attention. We are not aware, however, says the Chief Justice, of any attempt on the part of the executor or administrator, to maintain an action in any such case. When there is damage done to the personal estate of the deceased, that involves a different question.
One of the earliest cases reported, bearing on this subject, is that of Higgins v. Butcher, and which arose in the time of James I, about the year 1600. (1 Brown., 205; 1 Yel., 89; Noy, 18 S.C.,) The plaintiff declared, that the defendant assaulted and be at, c., one A. his wife, such a day, of which she died such a day following, to his damage, c., and it was moved by Foster Serjeant, that the declaration was not good, because it was brought by the plaintiff for beating his wife, and that being a personal tort to the wife, is now dead with the wife; and if the wife had been alive, he could not without his wife have this action for damages, which shall be given to the wife for the tort offered to her body, quod fuit concessum."
In Baker v. Bolton (1 Camp., N.P., 493), the plaintiff declared that he and his wife were riding on the top of a stage-coach, when it was overturned, whereby he was much bruised and his wife was so severely hurt that she died about a month after in the hospital. The declaration, beside other special damage, stated that, by means of the premises, the plaintiff had wholly lost and been deprived of the comfort, fellowship and assistance of his said wife, and had from thence hitherto suffered and undergone great grief, vexation and anguish of mind. It appeared that the wife of the plaintiff had been of great use to him, in conducting his business. Lord ELLENBOROUGH told the jury that they could only take into consideration the bruises *Page 478 
which the plaintiff had himself sustained, and the loss of his wife's society, and the distress of mind he had suffered on her account from the time of the accident till the moment of her dissolution. In a civil court the death of a human being could not be complained of as an injury, and in this case the damages as to the plaintiff's wife must stop with the period of her existence. I have been unable to find any case reported in the English books holding a contrary doctrine. This certainly has been there the received and well-established rule of law. It so distinctly and unequivocally appears by the recital to the statute of 9 and 10 Victoria, giving an action to the personal representatives of the deceased, for injuries which caused the death, and known as Lord DENMAN'S act, and which was drawn by him while Lord Chief Justice of the Queen's Bench. It is needless to say that such eminent authority is authoritative on this point. The recital to the first section of this act says: "Whereas, no action at law is now maintainable against a person who, by his wrongful act, neglect or default, may have caused the death of another person, and it is oftentimes expedient that the wrongdoer in such cases should be answerable in damages," c. The whole current of authority in this country tends to the affirmance of the same doctrine. The case of Carey v. Berkshire RailroadCompany (1 Cush., 475), was an action by a wife to recover damages for the loss of her husband. The court held the action could not be sustained. Judge METCALF says, if these actions can be maintained, it must be upon some established principle of the common law. He said we might expect to find the principle applied in some adjudged case in the English books; but no such can be found, nor the principle stated, in any elementary treatise of approved authority. He refers to the case of Baker v. Bolton
(supra), and the principle there announced, "that, in a civil court, the death of a human being cannot be complained of as an injury," and adds: "Such, then, we cannot doubt, is the doctrine of the common law, and it is decisive against the maintenance of these actions." This case is affirmed in Kearney v. Boston andWorcester Railroad Company (9 Cush., 109). And again inHollenbeck v. *Page 479 Berkshire Railroad Company (id., 480), Chief Justice SHAW says: "It is perfectly well settled, as a rule of the common law, that all rights of action for injury to the person die with the person; and it follows, therefore, if either the plaintiff or defendant should die before judgment, any existing action brought to recover such damage must abate; and if none had been brought by the party injured, none could be commenced by his personal representative. It was the obvious purpose of the statute to reverse this rule of law, to provide that the right of actionshould survive, as in cases of damage to property, and, of course, be liable to be prosecuted by or against an executor." InSafford v. Drew (3 Duer, 637), HOFFMAN, J., says: "In the first place, it is to be noticed that, by the rules of the common law, before the statute, no action could be maintained by personal representatives of a deceased person for loss or damage resulting from his death." It is unnecessary to refer in detail to the many cases scattered through the books sanctioning this doctrine. There is one other, in this court, which ought not to be omitted. It is that of Quin v. Moore (15 N.Y., 432), in which COMSTOCK, J., delivering the opinion of the court, says: "For example, in the present case, James Kernes was a minor; his mother was, by law, entitled to his services until he became of age: of these she was deprived by the wrongful or negligent act of the defendants, which destroyed his life. The common law gave no action for this injury. The statute, possibly with greater justice, declares a different principle, and holds the wrongdoer liable to make compensation." (See, also, Vandeventer v. N Y N.H.R.R. Co., 27 Barb., 244, and cases there cited; Green v.Hudson River R.R. Co., 28 id., 9; Crowley v. Panama R.R.Co., 30 id., 99.) These authorities conclusively settle the question that, where injuries are inflicted causing the death of the person, all right of action for such injuries dies with the person upon whom they are inflicted. The exceptions are, that a husband may maintain a civil action for an injury to the wife, so far as medical service and funeral expenses were incurred, or a parent for the loss of a child's service up to the time of its death; but not for the loss of life. *Page 480 
(14 B. Mun., 204.) But this action is not of that character. It is brought by the administrator, under the statute, to enforce a right conferred by the statute. It appeals to no common-law right of action, and rests upon no common-law principle. The cause of action of the plaintiff in this case is not placed upon the ground of any contract made by his intestate with the defendants to carry him safely from Aspinwall to Panama, The cases, therefore, cited (15 How. Pr. R., 128, and 16 id., 8), have no application.
The only remaining question to be considered is, whether this action created by and deriving all its vitality from a statute of this State, can be maintained, when the injury was inflicted without the territorial limits of this State. It is in this view of the case an entirely immaterial question whether the injury was caused by the wrongful act, neglect or default of a natural or artificial person, or whether the artificial person was created by the laws of this State, or that of any other State or foreign country. Keeping in view the proposition, which it is deemed has been established, that no such action could have been maintained at the common law, on what principle is it, that for the act of the defendants, committed in New Grenada, they can be made liable, by virtue of the statute of the State of New York, which has no extra territorial vitality, and is of no effect whatever there? Supposing the defendant was a natural person, and the owner of the Panama Railroad, and had sold to the plaintiff in the city of New York, a ticket for the objects stated in the complaint, and had imposed on him the duties alleged to have been assumed by the defendants, and the injury had happened as in the present case, can it be argued that the defendant would have been liable? If he could, it would depend on the circumstance, that the duty was assumed in the State of New York, and whatever liabilities attached to the assumption of like duties in this State, to be performed here, by the laws thereof, attached equally to the same duties to be discharged and performed in other States and territories. Supposing the administrator of the intestate had sought to enforce his claims *Page 481 
in another State than this, where no statute like ours was in force, he would have to maintain and establish that the statute of this State must be recognized and enforced in the forum which he had sought. Suppose a similar transaction to this had taken place in England, and the person on whom the duty safely to transport, rested, had resided there after the passage of the act of 9 and 10 Victoria, and a similar accident had happened, and the administrator had sought his remedy in the the courts of this State happening to find the party liable under this statute within this State, can it be seriously maintained that by virtue of the act of 9 and 10 Victoria, he could recover here? I suppose clearly not; and these illustrations show that the plaintiff cannot, in this action, recover by virtue of our statute, for injuries which occurred to his intestate, happening where that statute had no force. It is unnecessary to add, that a statute of a State of this Union has no extra territorial effect. And while all transactions occurring here, or liabilities for acts done here, are to be affected and governed by our local law, no such result follows transactions occurring in a different State or territory where those laws are unknown, where they are entirely inoperative, and where different rules applicable to the subject-matter may prevail. Warley v. Cincinnati, Hamilton andDayton Railroad Company (1 Handy's R., 481), Campbell v.Rogers (2 id.), Ashley v. White, (2 Smith Leading Cases, 131, note), sustain the principle, that an action arising under a similar statute cannot be maintained where no such statute was in force in the State or territory where the injury was inflicted. In our own State there have been several decisions on this precise point. (Vandeventer v. N.Y. N.H.R.R. Co., 27 Barb., 244; Whitford v. The Panama R.R. Co. 3 Duer, 67; Crowley v.Panama R.R. Co., 30 Barb., 99; Beach v. Bay State Co., 16 How., 1; S.C., 30 Barb., 433.) The cases in 27 Barbour and 16 Howard are special term decisions, the others were made at general terms. In the case in 3 Duer, the question is very elaborately discussed by Mr. Justice WOODRUFF. The reasoning of this very able opinion is, in my judgment, eminently sound and conclusive. The learned *Page 482 
judge very truly says: "It will hardly be denied, that the consequences of any act done upon the soil of New Grenada depend upon the laws of that republic. Contracts made and to be performed there, are governed by those laws. An act done there which is lawful there cannot be held illegal anywhere. Acts done or neglects occurring there, if they are justified by the law of that State, are justified everywhere, and if these defendants are not liable there, they are not liable here, for, as is said inCampbell, administrator, v. Rogers (19 Law R., N.S., 329), if there is no right to recover for an alleged injury, in the State where it is said to have been committed, there can be none in any other State. And on the other hand, if the State in which the alleged injury is committed has declared the consequences and defined the liability therefor, that law must govern. Let it be supposed that New Grenada has by law, or in the grant under which the defendants act, prescribed the cases in which the defendants should be liable for a death caused by the negligence of their servants and the extent of that liability. It would not, we think, be gravely insisted, that they use their railroad under any other or greater responsibility than is so prescribed." The same question has undergone an elaborate review in the case ofCrowley v. These defendants (30 Barb., 99), at the general term of the seventh district. All the arguments urged on the part of the plaintiff in this case are met and conclusively answered there.
In reference to the argument, that it was the intention of the legislature that the statutes of 1847 and 1849 should have an extra-territorial force, the learned Judge who delivered the opinion of the court, says: "The purpose of the legislature in such cases should be very explicitly declared, if such were the intent of our act. But if these acts follow the citizen out of the State, so as to give a right of action enforceable against any person or corporation of which the courts can get jurisdiction, for wrongs done out of the State, then the acts of any other State or legislature may, upon the same principle, operate throughout the Union or throughout the *Page 483 
civilized world, as valid laws, so far as to give a right of action whenever jurisdiction of the person could be obtained. An act of the legislature of this State would thus practically become universal public law. I think this cannot be the intent or force of these acts. They are purely local, and limited to the sovereignty and domain of the State, and only apply where the subject-matter of the action arose within this State." In Beach
v. Bay State Company (30 Barb., 433), the general term in the first district had under consideration the question presented for our determination in this case. It arrived at the conclusion that the action given by the statutes of 1847 and 1849 could not be maintained where the injuries were inflicted without this State. SUTHERLAND, J., says: "There is nothing in the acts of 1847 and 1849 which shows that they were intended to protect the lives of its citizens while out of the State; — nothing to show that they were intended to extend to acts, neglects or defaults, committed or suffered in another State. It must be presumed, I think, as the result of the general principle of the territorial limit of political jurisdiction, and of the force of laws, before adverted to, that these statutes were intended to regulate the conduct of corporations, their agents, engineers, c., and of other persons, whilst operating or being in this State only. If a citizen of this State leaves it and goes into another State, he is left to the protection of the law of the latter State."
Again it is to be observed, that the third section of the act of 1849 is highly penal. It denounces as a crime and punishes by imprisonment and fine, the same wrongful acts, neglects or defaults, for which an action is given by the first section. Can it be for a moment argued that the servants of the defendants could be indicted and punished in this State for the wrongful act, neglect or default, by which the plaintiff's intestate lost his life? Criminal actions and proceedings are strictly local, and to subject an offender to punishment the crime must be committed within the limits of the sovereignty seeking to punish the offense. This view of the subject furnishes, in my judgment, a conclusive answer to the claim, that the party *Page 484 
guilty of the wrongful act, neglect or default, without the territorial limits of this State, can, under these statutes, be called to an account in our courts, either civiliter orcriminaliter.
The judgment of the Superior Court should be affirmed, with costs.
SELDEN, LOTT, MASON and JAMES, Js., were also for affirmance; COMSTOCK, Ch. J., dissented, referring for the grounds to his opinion in the case of Dibble v. The New York ErieRailroad, argued at the same term, and in which a reärgument was ordered, the judges being equally divided. That opinion was as follows:
COMSTOCK, Ch. J.
I think this case is a very plain one. The intestate was injured in his person through the negligence of the defendants. Six weeks after the accident, he received and acknowledged a full satisfaction of the wrong. The settlement which he made is not impeached or questioned for fraud, mistake, or upon any ground whatever. About a month afterwards he died, as the jury have found, in consequence of the injuries, and his personal representative now seeks a new compensation, to be distributed according to the rules of law relating to intestates' effects. This claim appears to me altogether without foundation.
At the common law the rule was understood to be, that purely personal wrongs died with the person who received them. This rule was, perhaps, not founded in any just or enlightened policy. It was, at all events, unsuited to the condition of society in this age, when railroads and steamboats have become the carriers for hire of vast numbers of human beings, exposing life to frequent and numerous casualties. If the carrier neglects the means of safe transportation, and the passenger is injured thereby, but survives the injury, his right to compensation is plain, without the aid of legislation; and the amount of such compensation will become a part of his estate. If he afterwards dies in the course of nature, the *Page 485 
indemnity which he has received will be subject, like any other estate which belonged to him, to distribution according to law. But if he dies without receiving such indemnity, or recovering a judgment therefor, the common law has provided no successor to the right; and the compensation due to the injured party in his lifetime becomes lost to his estate. This being manifestly unjust, the legislative power has intervened in many of the States, and in the parent country, to correct the evil. Legislation of this kind, although suggested by the exposures and accidents attending the new modes of travel which I have mentioned, is, nevertheless, general in its application, and is founded in a principle of universal justice.
But this legislation, with us, however it may be elsewhere, is remedial, and not creative. It adds no new definition to the category of actionable injuries, but it provides that immunity to the offender shall no longer be the consequence of the death of him who is injured, if such death be occasioned by the wrongful act or neglect. No new cause of action is created by the legislature; but the cause which, by the rules of the common law, has become lapsed or lost by the decease of the person to whom it belonged, is continued and devolved upon his administrator, who takes it by representation, as he takes other personal estate and rights of the decedent.
This is the conclusion suggested by a view of the evil or injustice which required a remedy; and it is fortified by the terms of the legislative act under which this action was brought. (Laws of 1847, p. 575, ch. 450.) That statute declares, in its first section, that, "whenever the death of a person shall be caused by the wrongful act, c., and the act, c., is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstandiny the death ofthe person injured, and although the death shall have been caused under such circumstances as amount in law to a felony." This language plainly points to the wrongful act or *Page 486 
neglect as the cause of the action; and death is regarded as the incident or consequence of the wrong. Damages are declared to be recoverable, not for the killing, but notwithstanding, or in spite of, the death which ensues. The statute recognizes but one cause of suit, and that is, the wrong done, irrespective of its consequence. The injured party may be maimed for life, or he may die in a moment, or in a year, as the result of the injury. These are circumstances which may well influence the amount of compensation to be claimed; but the statute declares the wrongful act, c., and that only, to be the foundation of the suit. The common law afforded no civil remedy after the death of the party. The statute supplies that remedy, by allowing his representative to maintain the action.
The opposing argument is founded wholly on the idea that the cause of suit by the administrator is the death of the party, and not the wrongful assault or negligent conduct by which it is occasioned. The second section of the act is referred to in support of this theory. But that section begins by declaring that "every such action shall be brought by and in the names of the personal representatives of the deceased person." What follows, relates to the damages and the distribution thereof. Now, the action here spoken of is precisely the one authorized in the previous section; which is founded distinctly on some wrong or negligence for which the injured party himself might sue. Again, the redress must be sought in the name of his representative. In the view of the statute, therefore, the right to be enforced is not an original one, springing into existence from the death of the intestate, but is one having a previous existence, with the incident of survivorship, derived from the statute itself. The death may be sudden: in common language, instantaneous. But in every fatal casualty there must be a conceivable point of time, however minute, between the violence and the total extinction of life. That period may be a year, or it may be less than the shortest known division of time. During its continuance the right of compensation for the wrong belongs to the victim, and it is capable of devolution, *Page 487 
like other rights, upon his representative. This is the theory of the statute, unless its language is strangely chosen to express the purpose intended.
It is said, however, that according to the 2d section, damages may be given by the jury with reference to the pecuniary loss to the wife and next of kin, resulting from the death of the injured person. This is true, but it has no tendency to show that the death is the original cause of the suit. The death is the consequence of the wrong, and like any other consequence it may have a just bearing upon the question of damages. In the contemplation of the statute, the life of the person wronged has a greater or less value to his estate, and if his life be taken away, the amount of the loss from that cause is one of the items, and if the death be sudden it may be the chief or only item to be considered in adjusting the compensation.
The true point of inquiry is, whether a wrong of this nature resulting in death affords more than a single cause of action. If it does not then the proposition becomes too plain for argument, that the right is wholly vested in the injured party until he dies, whether he survives the casualty a moment or a month; and consequently he may deal with such right in any manner he pleases.
Now, to affirm that, in cases of this nature, two causes of suit arise, one in favor of the decedent in his lifetime, the other founded on his death, is to depart from the plainest legal analogies. An assault and battery resulting in death, is a case precisely within the statute, and we may take it as an illustration. The injured plaintiff bringing his action at the common law, must recover entire damages because the tort is single and indivisible. After one trial and recovery no new development of injury or damage will justify another suit. So if one satisfaction is received, another cannot be claimed on the ground that new consequential results of the wrong have appeared, which were unknown at the time when the satisfaction was accepted. The principle is well illustrated in an early reported case, where a piece of the plaintiff's skull came out, *Page 488 
in consequence of a battery, after a trial and recovery had been had. It was held that no second action would lie. We may suppose then that death ensues as the foreseen consequence after the wrong has been satisfied or has passed into judgment against the offender. It would be competent, doubtless, for legislative power to define this as a new and distinct cause of action, which ought to go to the increase of the decedent's estate; but the departure from the logic and the analogies of the law would be so manifest that the intention ought to be expressed in very unambiguous terms.
Against such a construction of the act in question may be urged not only its language, upon which I have commented, but the consequences, which must involve the administration of justice under the statute in great absurdities. We may suppose a case where a plaintiff has been crippled for life, in a railroad collision, and brings his action at the common law, and that on the trial it appears from the medical testimony that for the remainder of his days he must be a burden instead of a benefit to his estate. It is plain that the damages in such a case must be awarded upon grounds which necessarily include the claims of his representative under the statute, if death had been the immediate result of the injury. And yet, upon the doctrine contended for, if the plaintiff should die after such a recovery, in a new action a jury might award $5,000 more. This would be a double satisfaction not only for a single tort but without any new development of loss or damage. I have in mind a case where the injured plaintiff recovered a verdict of $14,000, against a railroad company. If he had afterwards died of the injury another verdict might, under the statute of 1847, have been rendered in the suit of his representative.
Again, we may suppose that the person injured, without bringing suit, lingers in pain and suffering for a year, and dies, and that, during all that period, he has not only been unable to attend to his business affairs, but has incurred great expense for medical care and attendance. All these circumstances would be considered in estimating the damages to which the party was entitled in his lifetime. If such damages were paid *Page 489 
to or recovered by him, those entitled in succession after his death would take the benefit. But, not being paid or recovered, they are forever lost, if the proposition contended for in this case is sound. That proposition is, that the action of the representative in such cases is founded on the death as a cause of suit, distinct from the compensation which the injured person has a right in his lifetime to claim. But the statute says that the damages may be recovered, not for the death, but"notwithstanding the death." The legislature thought it unjust that the wrongdoer should allege that the injury inflicted by him was fatal, in other words the highest possible aggravation of the wrong, in bar of the claim for damages. They, therefore, changed the rule of the common law by providing that the damages should go to the representative for the benefit of the wife and next of kin. My conclusion is, that the claim of the decedent, in his lifetime, under the statute always vests in the representative. Some remarks of mine in Quin v. Moore (15 N.Y., 435), may be in opposition to this view. But they were unnecessary to the decision of that case, and were not well considered.
It may be urged that the party, while living, can never recover a compensation for his own death by a verdict rendered in his lifetime. In mere words, this is a plausible statement. But, in a legal point of view, the difficulty does not exist. Every suit to recover damages is brought, in a just sense, for the benefit of the plaintiff's estate. On the trial of an action for a personal injury, it may appear that death must afterwards ensue as the result of the wrong. Medical science may easily demonstrate the fact. Or, it may appear to be doubtful whether the plaintiff will be a helpless cripple while he lives, and die in the course of nature; or whether he must die from his injuries within a few days. Upon a doubt of that kind, would it be proper to instruct a jury to mitigate the damages in case they believed that death must ensue? Plainly this cannot be so. It was never heard that an assault and battery, or other tort to the person, was of less consequence in the eye of the law because it is attended with such force and *Page 490 
violence that the life of the victim is shortened. The aggravation of the circumstances cannot be urged in mitigation of the loss or of the punishment which the law metes out to the offender.
The analogies of the law require, as I have said, that entire compensation for all the consequences for a single wrong must be given by a single verdict. Those consequences may have been experienced at the time of the trial, or they may be prospective. If prospective, they are to be ascertained as well as they can be from the nature and severity of the injury inflicted. Some infirmity will always attend the administration of justice, arising out of uncertainty in the facts to be considered. But the principle here stated is elementary and familiar. If a parent brings the action for an injury to his child, the loss of service, both past and future, will enter into the question of damages. The future loss may result from the child's death, an event which the evidence may show will be the probable result of the wrong. The evidence must determine the fact to the satisfaction of the jury. The principle of compensation will not change, as the evidence may shift, on this point. The loss of service may result from inability to labor or from death, and it is not material which. In such cases, doubtless, two actions may be brought without the circumstance of death. The child may recover for the personal wrong and suffering; the parent for the consequential loss of service. If death results, both these causes of suit may, or may not, be united in the administrator. On principle, I should say that the action of the parent, for the consequential loss of said service, is not affected by the death of his child or servant. However that may be, it is plain that there is only one cause of action when the person injured owes no service to any one else. This is conceded to be true while he lives, and I think it equally true after his death. It is true the statute says "the jury may give such damages as they shall deem fair and just, resulting from the pecuniary injury resulting from such death." This would be so without the statutory declaration. The statute was only required to create a survivorship of the cause *Page 491 
of action: that being established, all the circumstances attending and resulting from the wrong would enter into the measure of damages; and where there is but one cause of action in the lifetime of the party, I think that the action by his representative is not only for the same wrong, but that the damages to be recovered are determined according to the same principles and facts. Such a wrong, therefore, admits of but one satisfaction, which was had in the present case before the suit was brought.
HOYT, J., also dissented.
Judgment affirmed.