MARY CROWLEY, adm'x, &c. *vs.* THE PANAMA RAIL ROAD COMPANY.

No action would lie, at common law, in this court, against a corporation created by the laws of this state, for causing the death of an individual in another state or country, by the negligence and unskillful conduct of its agents and servants, even if the death occurred in this state.

Nor will such an action lie, since the passage of the acts of the legislature, of 1847 and 1849, giving a right of action to the next of kin of persons killed by the wrongful act, default or neglect of another; in the absence of any clause in the defendant's charter subjecting the corporation to the operation of those acts, as a part of the condition of its being.

Those statutes are purely *local*, and limited to the sovereignty and dominion of the state; and they only apply when the subject matter of the action arose within the state.

Where a complaint alleged that on &c., at the city of New York, for a reasonable compensation paid by B., the plaintiff's intestate, the defendant, a corporation chartered by the laws of New York, agreed to convey B. over its rail road from Aspinwall to Panama, in New Grenada; that the defendant subsequently received B., on its rail road, at A.; and its servants and agents so negligently and unskillfully conducted themselves in the management of the said rail road that through such negligence B. was killed while a passenger in one of the defendant's cars; *Held*, on demurrer, that the action would not lie, it not being founded upon the contract, but upon a tort, committed in another country, the right of action for which did not survive, and for which the court had no jurisdiction under the acts of 1847 and 1849.

The cause of action under the acts of 1847 and 1849 is a new and original one, given by, and depending wholly upon, the statute.

APPEAL from a judgment entered at a special term, on demurrer to the complaint. The action was brought by the plaintiff as administratrix of Bartholomew Crowley deceased. The complaint set forth the plaintiff's appointment as such administratrix, by the surrogate having jurisdiction, and alleged that the defendant was a corporation created by act of the legislature of the state of New York, passed April 7, 1849, entitled an act to incorporate the Panama Rail Road Company, and at the times hereinafter mentioned, being such corporation, was proprietor of a certain rail road known and designated as the Panama rail road, in the republic of New

Grenada, and engaged in transporting passengers thereon for hire as a common carrier. That on or about the 24th day of April, 1856, at the city of New York, for a reasonable compensation paid to the defendant by the said Bartholomew Crowley, the defendant agreed to carry the said Bartholomew over their said rail road from Aspinwall to Panama, when he the said Bartholomew should thereafter arrive at Aspinwall, in the steamer then next ensuing; and that immediately after the arrival of the said steamer, to wit, on the 6th day of May, 1856, at Aspinwall aforesaid, the defendant received the said Bartholomew into one of its passenger cars for the purpose of carrying him therein as a passenger from Aspinwall to the city of Panama, in the republic of New Grenada aforesaid. That the servants and agents of the defendant so negligently and unskillfully conducted themselves in the management of the aforesaid rail road, and of the said train of cars, into one of which the said Bartholomew had been received as a passenger, that through and by reason of the negligence and unskillfulness of the defendant's said servants and agents in conducting the aforesaid train of cars, in one of which the said Bartholomew had been received, and then was a passenger to be conveyed as aforesaid, and through the negligent and unskillful conduct of the defendant's servants and agents in the management of the road, the said Bartholomew then and there lost his life. That by reason thereof, the plaintiff, the widow of the said deceased, and his next of kin, had suffered damage to the amount of $5000; wherefore the plaintiff, as such administratrix, asked judgment for $5000 against the defendant, with costs.

To this complaint the defendant demurred, because it appeared upon the face thereof, *Firstly*. That the court had no jurisdiction of the subject of the action. *Secondly*. That the complaint did not state facts sufficient to constitute a cause of action against the defendant. And the defendant stated, as the grounds of objection to the complaint, and of their demurrer, as follows: That it appears upon the face of the

complaint, that the death of the said Bartholomew Crowley was caused by the wrongful act, neglect or default of the defendants, on the Isthmus of Panama, in the Republic of New Grenada, and out of the state and jurisdiction of New York; and that no statute or law is in force in the state of New York which gives to the plaintiff, against the defendants, any right of action, by reason of any thing alleged in said complaint.

The court at special term overruled the demurrer, and ordered judgment for the plaintiff; and the defendant appealed.

*D. B. Eaton,* for the appellant. There is no allegation in the complaint as to the law relative to common carriers, in force in New Grenada; and it is therefore evident that the defendant cannot be held liable in the action under any other law than that in force in New York.

I. Prior to the New York statutes of 1847 (*Laws of* 1847, *p.* 575, *ch.* 450,) and 1849, (*Laws of* 1849, *p.* 388, *ch.* 256,) giving an action to the next of kin &c. of persons killed by negligence, under certain circumstances stated in those acts, the next of kin or personal representatives had not any right of action against those who should, by negligence, cause the death of a human being. No such right of action is recognized by the common law or by the laws of New York. *Actio personalis moritur cum persona, &c.* (*Broom's Leg. Max.* 558. *Chitty's Pl.* 68, 69. *Statute* 9 *and* 10 *Vict., ch.* 93, *p.* 531. *Cory &c.* v. *The Berkshire R. R. Co.,* 1 *Cush. Rep.* 475. *Pack* v. *The Mayor &c.,* 3 *Comst.* 493, *disapproving* 20 *Wend.* 210. *Huggins* v. *Butcher,* 1 *Brownlow,* 205. *Safford* v. *Drew,* 12 *N. Y. Leg. Observ. May,* 1854, *p.* 150. *Worley* v. *Cincinnati, Hamilton and Dayton R. R. Co.,* 1 *Handy's Ohio Rep.* 481. *Campbell* v. *Rogers,* 2 *id.*)

II. The complaint is founded solely and specifically on the New York statutes, and damage is claimed under those statutes. It is therefore necessarily claimed by the plaintiff that an act of the legislature of New York, creating a new right

of action, and giving damages for causes that before the statute were without responsibility for damages, extends to every part of the world, and binds citizens of New York wherever they may, through negligence, cause the death of a human being.   If such be the rule of law, then every other act of the legislature of New York relating to negligence, and one man's responsibility to another for any careless conduct, will also apply and be of binding obligation in every other part of the world.   And, as a further consequence, it must follow that every similar act of the legislative bodies of all other countries will, at least as to those resident therein, apply and be of full force in the state of New York.   The conflict and confusion of rights and duties that such a rule of law would give rise to are apparent.

The appellants claim that it is the well settled law that statutes like those in question, regulating personal conduct and responsibility, are exclusively interterritorial in their application, and that no action can be maintained upon them, unless the act complained of took place within the state which enacted them.   They have no more extra territorial effect than the license law, or the general rail road law, or the laws relating to canals and roads.   Will it be pretended that a rail road built and operated by citizens of New York, in Michigan or Oregon or Russia, must be constructed and operated according to the provisions of the general rail road act of 1850 ? (*Laws, p.* 211.)   Would sections 27 and 30, 37 and 38 of that act so apply ?   Would the New York court enforce sections 39, 41, 42, 43 and 44, where the road was situated in a foreign state ?   Can the courts of New York punish the persons guilty of the negligent acts complained of in this suit, under the 2d section of the act of 1849 ?  (*See Laws of* 1849, *ch.* 256, *p.* 389.)   It is admitted that certain trespasses and offenses are transitory, but they are only such as are a violation of absolute rights, recognized and protected by the common law, and which exist and were protected prior to any statute.   Our courts, therefore, in absence of any proof to the

Crowley *v.* Panama Rail Road Company.

contrary, may presume those rights to exist and to be protected by law every where, until the contrary is proved. But when a right arises from a statute, in New York, the theory of the presumption referred to would require the courts to presume that such right did not exist elsewhere, unless a statute is proved there.

It is admitted that acts relating to the *status* of a person in one state will be regarded as of force in another ; as whether he be a husband or wife-executor, guardian, &c. It is also admitted that a contract valid in the state where made, is, as a general rule, held valid every where. But these are very different cases from the one under discussion ; and the cases last put arise upon common law rules and rights. The case under discussion involves the question whether a new rule of liability as to *torts,* enacted in and for New York, extends to New Yorkers every where, and places them, in all the regions of the globe, under liabilities, as to whatever business they undertake, which do not attach to people of other states, nor arise under the general principle of the common or public law.

If it be said that the defendant is a New York corporation, and subject to New York laws, we say it is to be treated as any citizen of New York would be treated, if he, residing in this state, owned a rail road in New Grenada or Russia. The fact that the defendant is a corporation, makes no difference as to the construction of this statute. Any private individual might be substituted as defendant, or may purchase the defendant's road. It does not appear that the plaintiff was a citizen of New York at the time of taking passage or receiving the injury ; and if it did, it cannot be maintained that New Yorkers can claim a different construction of this statute in a foreign country, from what may be claimed by a citizen of New Jersey, who was a passenger on the same train and injured at the same time.

It cannot be held that the fact (if conceded) that the contract of carriage was made in New York, must decide the construction of the statute ; for (1.) The action is not *in fact*

founded on contract at all. (2.) No action, under or upon the statute, can be founded on contract, for the statute is not one purporting to give a right or remedy under a contract, but gives damages for a *tort* only. The section already referred to, (*Laws of* 1849, *p.* 389, § 2,) makes the parties who are guilty of the negligence (*tort*) referred to, liable to be indicted. It is absurd, therefore, to regard the statute as relating to contracts. (3.) But even if it could be said that the statute was one giving a remedy for a violation of a contract, we say the contract would be one (on the plaintiff's theory) made in New York, *but to be executed* in a foreign country ; and the rule is universal that a contract is to be construed in reference to the law of the *place where it is to be executed.* It cannot be, and is not pretended, that by the laws of New Grenada, there was any liability for damages for the acts complained of. The general principles here maintained are illustrated in a great variety of forms in the following text books and decisions : (*Polson's Law of Nations,* 62 *Eng. Law Lib., N. S.,* 23. *Phill. on International Law,* 67 *Law Lib., N. S.,* 356. *Story on Confl. of Laws,* §§ 7, 8, 18, 20, 29, 31 *and* 539, 540, 621. *Hoyt* v. *Thompson,* 1 *Seld.* 320, 340. *Scoville* v. *Canfield,* 14 *John.* 338. *Hunt* v. *The Town of Pownal,* 9 *Verm. Rep.* 411, 417. *Sedgwick on Stat.* 69, 70. *Bank of Augusta* v. *Earle,* 13 *Peters,* 519. *People* v. *Adams,* 3 *Denio,* 190. *S. C.,* 1 *Comstock,* 173. *People* v. *Rathbun,* 21 *Wend.* 509. *Blanchard* v. *Russell,* 15 *Mass. Rep.* 14. *State* v. *Knight,* 1 *Taylor's T. R.* 65. *Inhab. of W. Cambridge* v. *Inhab. of Lexington,* 1 *Pick.* 506. *Pickering* v. *Fisk,* 6 *Verm. Rep.* 102. *Commonwealth* v. *Clary,* 8 *Mass. Rep.* 72. 1 *Eq. Cas. Abr.* 288. *Ferrett* v. *Bartlett,* 21 *Verm. Rep.* 184, 189. *Holman* v. *Johnson,* 1 *Cowp.* 341. *Vanderventer,* ex'r, &c. v. *New York and New Haven R. R. Co.,* 27 *Barb.* 244. *Beach* v. *Bay State Co., Id.* 248. *Indiana* v. *Johns,* 5 *Ohio Rep.* 217. *The Antelope,* 10 *Wheaton,* 66, 223. *Champion* v. *Janitzen,* 16 *Ohio Rep.* 91. *Goodsell* v. *St. Louis,* 16 *id.* 178. *Campell* &c. v. *Rogers,* 2 *Han-*

Crowley *v.* Panama Rail Road Company.

*dy's Rep. of the superior court of Cincinnati,* 1855; *also reported in vol.* 9 *Law Reporter, p.* 329.)

*R. A. Wilson,* for the respondent. I. The defendant in this action is an artificial person, created by an act of the legislature of the state of New York, passed April 7, 1849, and the contract for carrying the deceased was made and entered into at the city of New York. The court has therefore jurisdiction of the person of the defendant and of the subject matter of the action. The administratrix "must be at liberty to allege the same cause of action that the party injured (if not killed) could have alledged; the death certainly not changing the cause of action from contract to tort." (*Opinion of Gould J. in Doedt* v. *Wiswall,* 15 *How.* 128. *See also Beach* v. *Bay State Steamboat Co.,* 16 *id.* 1; 23 *Penn. St. Rep.* 528, 530, *and cases cited.*)

II. The contract was to carry the deceased across a small portion of a foreign country—an isthmus crossed by an American mail route—and by the ordinary route of travel between one portion of the United States and another. The fair presumption is that the deceased was a citizen of the United States, passing from one portion of his own country to another portion of the same; and no evidence appearing to the contrary, a citizen of New York, where the contract for passage was made. The *lex fori,* which is the *loci contractus,* must, under the circumstances, determine the liability of the defendant.

III. The Isthmus of Panama is, for transit and certain other purposes, quasi United States territory. The United States, by treaty, are authorized to transport troops, mails and stores across it, and to protect the same in transit. Passengers too, in crossing, are exempt from duties, custom-house examinations and passport regulations, and are under the protection of their own government. For purposes of this suit it might well be held to be United States territory; and the *lex loci contractus,* which deceased carried with him, entitles

the plaintiff to the remedy allowed by the laws of New York, at least until he fell under some other jurisdiction.

*By the Court,* E. DARWIN SMITH, J.   The defendant is a corporation, created by the laws of this state, and must be deemed a resident of this state.   (13 *Peters,* 519 ; *and* 14 *id.* 129.   2 *Howard's U. S. Rep.* 499.)   This court must, therefore, have jurisdiction of the person of the defendant, in the same manner, and to the same effect, as over natural persons resident within this state.   But jurisdiction of the person of the defendants does not include jurisdiction of the subject matter of the action.   And appearance waives nothing, for section 144 of the code expressly gives the right to demur to the jurisdiction of the court in respect to the subject matter of the action, as well as of the person.   And this is the question particularly raised upon this demurrer.   The cause of action in the complaint, so far as it depends upon the killing of the intestate, did not arise within this state, but arose on the rail road of the defendants, between Aspinwall and the city of Panama, in the Republic of New Grenada, where it is alleged the husband of the plaintiff was killed, by the negligence and unskillful conduct of the agents and servants of the defendants.   Clearly, no action at common law would lie for the cause stated in this complaint, even if the death had occurred in this state.   (*Quin* v. *Moore,* 15 *N. Y. Rep.* 436.   9 *Cranch,* 480.   *Green* v. *Hudson River R. R. Co.,* 28 *Barb.* 13.   21 *id.* 245.)   The right, therefore, to maintain this action, depends upon the question whether the acts of the legislature of this state, of 1847 and 1849, (*Sess. Laws of* 1847, *p.* 575 ; *Id. of* 1849, *p.* 388,) giving a right of action to the next of kin of persons killed by " the wrongful act, neglect or default of another," applies to the case.   If the defendants were a foreign corporation the case would be precisely identical with the cases of *Vanderventer* v. *The New York and New Haven R. R. Co.,* (27 *Barb.* 244,) and *Beach* v. *The Bay State Company,* (*id.* 248,) in which Justices Peabody

and Clerke, at special term, came to opposite conclusions. The general proposition is undoubted and indisputable, that the statutes of one state have no force, *ex proprio vigore*, beyond the territorial limits of the state. This is too obvious for discussion. But the courts in all civilized states do, more or less, take cognizance of causes of action arising in other states and countries, in respect to persons within their jurisdiction. This is universally done in all civilized countries, and especially where the common law prevails in respect to personal rights of action, so far as they are transitory. That the acts of 1847 and 1849 cannot affect foreign corporations, or citizens or residents of other states, and give rights of action against them enforceable in our courts, for acts done in other states and countries, is, I think, quite conclusively shown in the opinion of Justice Peabody, in the case of *Vanderventer* v. *The New York and New Haven R. R. Co.*, (*supra*,) in which I fully concur. But the question remains, may not these acts apply, as between citizens of this state, where the neglect or wrongful act causing the death took place in another state or country. The question, in this aspect of it, is precisely the same as if one citizen of this state, by some neglect, or default, or wrongful act, killed another citizen, in a foreign state or country. Whatever civil right of action by the law of the place attached to, or was given by, or arose from the act of killing in such case, would doubtless be transitory and follow the person, and might be enforced in this state. But if the law of the place gave no civil right of action for such cause, none of course would exist any where else at the time; and if the party causing the death never returned to this state, he could not, obviously, in any way be amenable to its law, or be subject to any liability under or by virtue of the same. Would his return to this state, *ipso facto*, subject him to an action under our statute? I think not. In *Beach* v. *The Bay State Company*, (*supra*,) Judge Clerke says : " It cannot be doubted that any one state or nation has the right to give to its citizens redress for personal inju-

ries committed *without* as well as *within* its territorial limits. This is undoubtedly so, within the scope of civil actions for the enforcement of all those rights of action which follow the person. But is it true beyond this limit ? Can one of our state governments, by its legislation, follow the citizen out of its territory, so as to confer jurisdiction on our courts to take cognizance of his acts, and give redress to or against him, for extra-territorial wrongs ?" The learned judge also says : " I can see no reason to infer that the legislature intended to confine the operation of these acts, (the acts of 1847 and 1849,) in their remedial features, to injuries committed within the territorial limits of this state." But, on the other hand, is there any gound to infer that the legislature intended to *extend* the operation of these acts beyond the limits of this state, or designed to apply them to persons residing in other states, artificial or natural, or citizens of this state residing temporarily abroad, so as to give a remedy against them, for injuries committed out of the state ?ˑ If the state *can do so*, I can see no evidence of any intent on the part of the legislature to give these acts such an extra territorial force. The purpose of the legislature, in such cases, should be very explicitly declared, if such were the intent of an act. But if these acts follow the citizen out of the state, so as to give a right of action enforceable against any person or corporation of which the courts can get jurisdiction, for wrongs done out of the state, then the acts of any other state or legislature may, upon the same principle, operate throughout the union, or throughout the civilized world, as valid laws, so far as to give a right of action whenever jurisdiction of the person could be obtained. An act of the legislature of this state would thus practically become universal public law. I think this cannot be the intent or force of these acts. They are purely *local*, and limited to the sovereignty and domain of the state, and only apply when the subject matter of the action arose within this state.

But as the defendants are a corporation organized under a

special charter of this state, and therein authorized to construct and maintain a rail road across the Isthmus of Panama, I have no doubt the legislature might expressly have subjected them, in the use of their said rail road, and in the exercise of their corporate franchises, to the operation of these acts, as part of the condition of their being. In looking into the charter I find, however, no provision on the subject.

The only question which remains to be considered is, how far the fact that the contract was made, and the fare paid, in this state, for the transportation of the plaintiff's intestate upon the defendants' road, affects the right of action here, notwithstanding the killing was in New Grenada. The complaint states "that on or about the 24th day of April, 1856, at the city of New York, for a reasonable compensation paid to the defendants by the said Bartholomew Crowley, (the plaintiff's intestate,) the defendants agreed to convey the said Bartholomew over their said rail road from Aspinwall to Panama, when he, the said Bartholomew, should thereafter arrive at Aspinwall; and that the defendants received him on their said road on his arrival there, and that the servants and agents of the defendants so negligently and unskillfully conducted themselves, in the management of the said rail road, that through such negligence the said Bartholomew was killed, while a passenger in one of their cars." Here was an express agreement made in this state safely to transport the plaintiff's intestate over the defendants' rail road as a passenger, which, if Crowley, from the negligence of the defendants' agents or servants, had sustained any injury on the said rail road, that he had survived, would unquestionably have entitled him to maintain his action therefor, in this state. If the cause of action set out in this complaint, therefore, could be considered as arising upon this contract, and surviving by force of the statute, in behalf of the plaintiff as the representative of the deceased, then most certainly the action could be maintained in this state. But such is not this action. It is not upon the contract. It is founded upon a *tort*. No right of action

for injuries to the person of Crowley can survive ; for " *actio personalis moritur cum persona.*"   The cause of action under the acts of 1847 and 1849 is a *new* and *original* one, *given by and depending wholly upon the statute.*   Such was the view of these statutes taken by Judge Hogeboom in the case of *Yertore, adm'x, &c.* v. *Wiswall,* (16 *Howard,* 8,) which, being a general term decision, is authority upon this point. And the same view was taken by the court of queen's bench, of the English statute of 9 and 10 Victoria, 93, from which statute, I presume, ours was copied, in *Blake* v. *Midland Railway Co.,* (10 *Eng. Law and Equity,* 442 ;) and by Judge Hoffman in *Safford* v. *Drew,* (3 *Duer,* 638.)

I think, therefore, that this court has no jurisdiction of the cause of action set out in the plaintiff's complaint, and that the judgment of the special term should be reversed, and judgment given for the defendant, upon the demurrer.

Judgment reversed.

[Monroe General Term, September 5, 1859.  *T. R. Strong, Johnson, Welles* and *Smith,* Justices.]