Denio, J,
It has been made a question whether a father who has been deprived of the services of a child, or a husband *467 who has lost the society and assistance of his wife, by acts of culpable negligence on the part of others, by means of which death has ensued, may not respectively maintain actions against the wrongdoer to recover damages for such an injury. Several of the cases in which that question has been discussed are referred to in Green v. The Hudson River Railroad Company (28 Barb., 9); and the opiyion of the Supreme Court in that case itself examines the point with care and ability. The present action does not in any way involve that controversy, and, as the case just referred to is understood to be pending in this court on appeal, it is intended carefully to abstain from the expression of any opinion upon it. The plaintiff in the case before us does not occupy any other relation to the deceased than that of the administrator of his estate; and it has never been suggested, so far as I know, that the ^personal representatives of a deceased person could, at the common law, sustain an action on account of the wrongful act of another which caused the death of the person whose estate they represent. The plaintiff, accordingly, bases his claim solely upon the acts of 1847 and 1849. These acts do authorize a recovery for such a wrong, in a case in which the deceased, if he had survived, could himself have maintained an action for the injury; and the damages recovered are declared to be for the benefit of the widow and next of kin of the deceased. The averments of the complaint bring the case precisely within the provisions of the statute, provided they apply to injuries of this kind, not committed within this State, but in a foreign country; and the single question to be determined is, whether they do apply to such cases.
The statement of a few general principles which cannot possibly be the subject of controversy, and for which no authority need be cited, will greatly simplify the discussion. In the first place, the courts do not, in general, take notice of the laws of a foreign country, except so far as they are made to appear by proof. In the absence, however, of positive evidence as to the law of another country, our laws indulge in certain presumptions. Prima facie, a man is entitled to personal freedom *468 and the absence of bodily restraint, and to be exempt from physical violence to his person, everywhere. Hence, if one bring a civil action for false imprisonment, or for an assault and battery committed abroad, he need not, in the first instance, offer any proof that such acts are unlawful, and entitle the injured party to a recompense in damages, in the place where they were inflicted; for the courts will not presume the existence of a state of the law in any country by which compensation is not provided for such injuries. And where the condition of. the law of another State becomes material, and no evidence has been offered concerning it, our courts will presume that the general principles of the common law, which we always consider to be consonant to reason and natural justice, prevail there. But no such presumption obtains respecting the positive statute law of the State. There is, generally, no probability, in point of fact, and there is never any presumption of law, that other States or countries have established, precisely or substantially, the same arbitrary rules which the domestic legislature has seen fit to enact.
In applying these remarks to the present case, we are brought to the conclusion that the statutes under which this action is instituted do not, so far as we know, or can assume, form any portion of the law of New Grenada, where the facts constituting the supposed cause of action occurred. These statutes have introduced a principle wholly unknown to the common law, namely, that the value of a man’s life to his wife or next of kin, constitutes, with a certain limitation as to amount, a part of his estate which he leaves behind him to be administered by his personal representatives. The contrary doctrine, to wit, that a cause of action existing for such a wrong in favor of the party injured, dies with him, and forms no part of the succession to which his wife and kindred are entitled, was so well established as to form one of the standing maxims of the law. (Broom’s Legal Maxims, p. 400.) Besides, by the general principle of the law of England and of this country, the personal estate of a deceased person, distributable to his widow and next of kin, consists onlv of the residue *469 remaining after the payment of his debts. In other words, the creditors are the primary claimants of the succession, and the executor or administrator represents their interests. But under these statutes the creditors are passed by, and the whole of the proceeds of the recovery goes to the surviving relatives. Again, although the action can be maintained only in the cases in which it could have been brought by the deceased, if he had survived, the damages nevertheless are given upon different principles and for different causes. In an action brought by a person injured, but not fatally, by the negligence of another, he recovers for his pecuniary loss, and in addition for his pain and suffering of mind and body, while under the statute, it is not the recompense which would have belonged to him which is awarded to his personal representative; but the damages are to be estimated “ with reference to the pecuniary injuries resulting from such death to the wife and next of kin of such deceased person.” This is a subject of damages which could not possibly have had any application in an action brought by the party injured if he had survived. This peculiarity has been noticed by Mr. Justice Coleridge in Blake v. The Midland Railway Company, (10 Eng. L. & E., 443,) in commenting on the British statute, (9 and 10 Victoria, ch. 93,) which is nearly like our own. The plaintiff, in a case under that statute, was allowed to recover for the mental sufferings of the wife on account of her husband’s loss; but this was held to be erroneous by the Court of Queen’s Bench. The learned Justice, in- pronouncing the opinion of the court, refers to an argument of the plaintiff’s counsel, that if the deceased had recovered he would have been entitled to a solatium,' and that therefore his representatives ought to be allowed it; “but,” he says, “ it will be evident that this act does not transfer this right of action to his representative, but gives to his representative a totally new right of action on different principles.” “ The measure of damages,” he adds, “ is not the loss or suffering of the deceased, but the injury resulting from his death to his family.” It may well be that if King had survived his injuries, he could have sustained an action against the defend *470 ants in the courts of this State, grounded on the presumption that the laws of Mew Grenada coincide with the rules of. the common law in respect to injuries to the person arising from the negligence of another. But the suggestion that the present action is brought to enforce the right which the common law gave to the deceased, and that the provisions of our statute should be considered as affecting only the remedy, which may always be regulated by the lex fori, is not, in my opinion, sound; for it is not a simple devolution of a cause of action which the deceased would have had which the statute effects, but it is an entirely new cause of action which is here sought to be enforced. The system of the statute, as well as of the common law is, that the right of action for damages on account of his bodily injuries, which belonged to the deceased while he lived, was extinguished by his death. The statute does not profess to revive his cause of action in favor of the executor or administrator. The compensation for the bodily injuries remains extinct, but a new grievance of a distinct nature, namely, the deprivation suffered by the wife and children, or other relatives, of their natural support and protection, arises upon his death and is made by the statute the subject of a new cause of action—in favor of these surviving relatives, but to be prosecuted in point of form by the executor or administrator. The reference in the first section of the statute of 1847, to the ability of the deceased to maintain the action if death- had not ensued, is inserted solely for the purpose of defining the kind and degree of delinquency with which the defendant must be chargeable in order to subject him to the action. The act, neglect or default must be such as would (if death had not ensued) have entitled the party injured to maintain an action, &c.
I have thus far assumed without a formal statement of the principle that the statutes referred to have no force beyond the limits of the State of Mew York. This is an elementary doctrine, and the contrary was not insisted upon as a general rule on the argument The laws of Mew York have no greater operation, in respect to transactions which take place wholly *471 within, the territories of New Grenada, than the laws of that republic have in regard to New York transactions. It is no doubt within the competency of the legislature to declare that any wrong which may be inflicted upon a citizen of New York abroad, may be redressed, here according to .the principles of our law, if the wrongdoer can be found here, so as to be subjected to the jurisdiction of our courts ; but as we could not'1 by any legislation of this kind put an end to the liability of the party to the ¡ex bci, or divest the foreign government of its jurisdiction over the case, such a statute would rarely be just in its operation, and would be more likely to lead to confusion and oppression than to any beneficial results. Hence, legislation of the kind suggested has not found any place in the statute books of modern nations, except in the case of laws respecting the.army and navy, which, when operating abroad, must of course be governed by the laws enacted by the govern' ment of the country which sends them forth, and except also in regard to foreign commerce prosecuted in our own vessels. In such cases the fleets and armies, and ships of commerce carry with them the nationality which originally belonged to them. Prima fade all laws are coextensive, and only coextensive with the political jurisdiction of the law-making power. (Story’s (Confl. Laws, § 18-20; United States v. Bevans, 8 Wheat., 336, 386; 3 Dall, 320—Translations from Huberus; Bank of Augusta v. Earle, 13 Pet., 519.) This limitation upon the operation of the laws of a country is quite consistent with the practice which universally prevails, by which the courts of one country entertain suits in relation to causes of action which arise in another country, when the parties come here so as to be made subject to their jurisdiction. Whatever liability the \\ defendants incurred by the laws of New Grenada, by the act mentioned in the complaint, might well be enforced in the courts of this State; the defendant as a domestic corporation being readily compellable to answer here. But the rule of decision would still be the law of New Grenada, which the court and jury must be made acquainted with by the proof exhibited^ before them.
*472 I have, thus far, omitted to notice the argument of the plaintiff’s counsel arising out of the circumstance that the defendants are a corporation created by the laws of the State of New York, for- the purpose of constructing and running a railroad in Central America. He deduces fr.om that fact the conclusion that they are fully subject to our laws for acts done in all places, and especially in the jurisdiction in which the principal object of their incorporation is carried on. On the contrary, I have applied to them the same rules which would have governed a natural person going from this State to conduct a business enterprise upon the isthmus of Panama; and I think there is no distinction, so far as concerns this question, in the two cases. There is no pretense that the government of New Grenada has ceded to the State of New York ány part of her jurisdiction or sovereignty over the territory occupied or used by the railroad company. The act incorporating the defendants suggests that three of the corporators—Aspinwall, Stephens, - and Chauncey—had obtained a grant of a right to construct the railroad from the New Grenadian government, and the company was authorized to purchase from these persons the rights so obtained; but there is no proof, or any reason to believe, that the grant was intended to transfer any political or judicial rights whatever. All which can 'be inferred from the statements in the statute is, that the local government had conferred upon these individuals the right to construct and operate a railroad, and to purchase and hold lands for that purpose, notwithstanding their alienage. If Mr. Aspinwall and his two associates had constructed and had run the road under their grant, there could, of course, be no pretense for exempting them from the operation of the laws of the country, or for applying to their transactions in that locality the laws of New York, any more than there would be for attaching the same consequences to the acts of any other citizen of New York who should go to a foreign country in the pursuit of his own private business. It'would be the common case of persons leaving their own country to transact business in another. No one would pretend that they carried the laws of the country *473 of their origin with them. But tne legislature of this State consented' to incorporate these grantees and other persons who had associated with them, in order that the company thus formed might concentrate the necessary capital to prosecute the work, and be enabled conveniently to transact their business by maintaining a perpetual succession, using a common name, and exercising the other attributes of a corporation. The legislature did not profess to confer upon them any rights in New Grenada, or to exempt them from any liabilities which would attach to natural persons there, or to retain over them any jurisdiction or control in respect to their liabilities to persons with whom they might come in contact in the course of their business in New Grenada. In my opinion the case does not differ, in the respect under consideration, from what it would have been if the grantees and their associates had entered into a partnership or private association for the purpose of carrying, on their enterprise. The act simply creates an artificial person to represent the interests of the several natural persons who took shares in the undertaking. Acts of incorporation necessarily specify the particular business which the artificial body is authorized to carry on. This is essential in order to enable the government to restrain the corporation should it attempt to prosecute a general business, and thus compete with individual enterprise. It was accordingly stated in the act that the purpose was to construct a railroad across the isthmus. This was a business which could only be carried on in that region, and, therefore, so far as the legislature of New York was concerned, they were authorized to proceed there and to prosecute their enterprise, if they should be permitted so to do by the local government. I am unable to see any necessity for retaining over them any of the domestic laws or institutions of this State. There is not, as has been remarked, any indication of an intention to do so; and it is entirely certain that our legislature had no power to exempt them from amenability to the laws of New Grenada. Many corporations are created by this State for the transaction of a business which is not strictly local in .its character as in the instance of banks *474 and insurance companies. Though the seat of their business is in a certain town or city, portions of it may be transacted in other States or countries. It has been decided that a bank chartered by and located in one State, may purchase exchange in any other. This was affirmed in the well-considered case of The Bank of Augusta v. Earle (13 Pet., 519). Such a purchase of a bill of exchange in Alabama was held to be within the corporate powers of the plaintiffs, who were a corporation created by the legislature of Georgia. But the court said that the validity of the transaction depended wholly upon the laws of the sovereignty in which it took place. Had a question arisen concerning the validity of the bill of exchange purchased, it would have been the laws of Alabama, where it was made, and not those of Georgia, which must have been appealed to, although one of the contracting parties was a Georgia corporation. It can make no difference, I conceive, whether the act of incorporation expressly, or only by implication, authorizes the company to perform corporate acts out of the State which created it. In either case the quality and legal effect of the acts, and .the liabilities which they entail upon the parties, depend solely upon the laws of the sovereignty within which they are transacted.
/ It would be easy to illustrate the correctness of these positions by referring to the preposterous results which would follow from a different rule. Suppose the government of New Grenada to have enacted that the proprietors of a railroad company should not be responsible for the negligence of its servants, provided there was no want of due care in selecting them; it could not be pretended that its will could be set at naught by prosecuting the corporation in the courts of another State where the law was different. Or suppose that government had passed a statute like ours, except that the amount which might be received was unlimited, no one, I presume, would deny that the full amount of damages which could be proved might be recovered, though it might exceed the limit in our statute, in whatever court the suit might be brought. The true theory is, that no suit whatever respecting this *475 injury could be sustained in the courts of this State, except pursuant to the law of international comity. By that law foreign contracts and foreign transactions, out of which liabilities have arisen, may be prosecuted in our tribunals by the implied assent of the government of this State; but in all such cases we administer the foreign law as from the proofs we find it to be, or as without proofs we presume it to be. The cases of Rafael v. Verelst (2 W. Black., 1055), and Mostyn v. Fabrigas (Cowp., 161), were decided upon the presumption respecting the foreign law to which I have referred. Both cases were actions in the English courts for the imprisonment of the respective plaintiffs in foreign countries. The principle applicable to the present question was not much discussed, but Lord Mansfield said, in the last case, that whatever would be a justification in the place where the thing was done, ought to be a justification where the case was tried; thus putting the liability of the defendant upon the provisions of the foreign law. The question involved in this case has been several times before the Supreme and Superior Courts, and the views which I entertain respecting it have been frequently enforced in elaborate and well-considered opinions. The decisions have been adverse to the right to maintain the action except in a single case where the plaintiff prevailed at a special term; but that judgment was reversed on appeal to the general term. (Vandenwater v. The N. Y. & N. H. R. R. Co., 27 Barb., 244; Beach v. The Bay State Co., id., 248 ; this case, 3 Bosw., 67; Crowley v. The Panama R. R. Co., 30 Barb., 99; Beach v. The Bay State Co., on appeal, id., 433.)
I am of opinion, with the Superior Court, that the acts of 1847 and 1849, do not apply to cases of death caused by the negligence or wrongful act of another, where the transaction occurred in a foreign country, and consequently that the judgment appealed from should be affirmed.
Davies, J.
It cannot be well questioned that at common law and without the aid of this statute, no action could be maintained by any one for the damages sustained by the death of the nlaintiff’s intestate.
*476 The action which, the law gave him, was for the injuries to his person, and the statute contemplates that no action can be maintained under it, but such as the deceased himself, if he had survived could have maintained. But all claims for injuries to his person, were extinguished by his death. “ Actio personalis, moritur cum persona,’[ is one of the most familiar maxims in the law. (Broom’s Legal Maxims, 400, 401; Chitty Pl, 68, 69, preamble to stat, 9 and 10 Vict., ch. 93, p. 531; Carey v. The Berkshire Railroad Company, 1 Cush., 475; Pack v. The Mayor, &c., of New York, 3 Comst., 493; in which the case in 20 Wend., 210, is disapproved; Higgins v. Butcher, 1 Brown., 205; Stafford v. Drew, 12 N. Y. Leg. Obs., May, 1854, p. 150; Warley v. Cincinnati, Hamilton and Dayton Railroad Company, 1 Handy’s [Ohio] R., 481; Lucas v. The New York Central Railroad Company, 21 Barb., 245; Greene v. River Railroad Company, 28 id., 9; 14 B. Mun., 204.)
It would seem to be clear, therefore, that at common law, no action could be maintained for damages to the person of the deceased, or for damages which the widow and next of kin sustained by reason of his death, in the name of the personal representatives or otherwise. An action cannot be maintained by an executor or administrator for a breach of promise of marriage made to the deceased, when no special damage is alleged. (Chamberlain v. Williamson, 2 Maule & Sel., 409.) Lord Ellekborottg-h, in delivering the opinion of the Court in this case, says, that the action was novel in its kind, and not any one instance was cited or suggested in the argument of its having been maintained, nor have we been able to discover any by our own researches and inquiries, and yet frequent occasion must have occurred for bringing such actions. He says the general rule of law is, that actio personalis moritur cum persona, under which rule are included all actions for injuries merely personal. ' That executors and administators are the representatives of the temporal property, that is of the debts and goods of the deceased, but not of their wrongs, except where those wrongs operate to the temporary injury of their personal estate. That if this action could be maintained *477 then every action founded on an implied promise to a testator, when the damage subsists in the previous personal suffering of the testator, would also be maintainable by the executor or administrator. All injuries affecting the life or health of the deceased, all such as arise out of the unskillfulness of medical practitioners, the imprisonment of the party brought on by the negligence of his attorney, all these would be breaches of the implied promise by the persons employed, to exhibit a proper portion of skill and attention. We are not aware, however, says the Chief Justice, of any attempt on the part of the executor or administrator, to maintain an action in any such case. When there is damage done to the personal estate of the deceased, that involves a different question.
One of the earliest cases reported, bearing on this subject, is that of Higgins v. Butcher, and which arose in the time of James I, about the year 1600. (1 Brown., 205 ; 1 Yel., 89; Noy, 18 S. C.,) The plaintiff declared, that the defendant assaulted and be at, &c., one A. his wife, such a day, of which she died such a day following, to his damage, &c., and it was moved by Foster Serjeant, that the declaration was not good, because it was brought by the plaintiff for beating his wife, and that being a personal tort to the wife, is now dead with the wife; and if the wife had been alive, he could not without his wife have this action for damages, which shall be given to the wife for the' tort offered to her body, quod fait concessum.”
In Baker v. Bolton (1 Camp., N. P., 493), the plaintiff declared that he and his wife were riding on the top of a stage-coach, when it was overturned, whereby he was much bruised and his wife was so severely hurt that she died about a month after in the hospital. The declaration, beside other special damage, stated that, by means of the premises, the plaintiff had wholly lost and been deprived of the comfort, fellowship and assistance of his said wife, and had from thence hitherto suffered and undergone great grief, vexation and anguish of mind. It appeared.that the wife of the plaintiff had been of great use to him, in conducting his business. Lord Ellenborough told the jury that they could only take into consideration the bruises *478 which the plaintiff had himself sustained, and the loss of his wife’s society, and the distress of mind he had suffered on her account from the time of the accident till the moment of her dissolution. In a civil court the death of a human being could not be complained of as an injury, and in this cáse the damages as to the plaintiff’s wife must stop with the period of her existence. I have been unable to find any case reported in the English books holding a contrary doctrine. This certainly has been there the received and well-established rule of law. It so distinctly and unequivocally appears by the recital to the statute of 9 and 10 Victoria, giving an action to the personal representatives of the deceased, for injuries which caused the death, and known as Lord Denman's act, and which was drawn by him while Lord Chief Justice of the Queen’s Bench. It is needless to say that such eminent authority is authoritative on this point. The recital to the first section of this act says: “ Whereas, no action at law is now maintainable against a person who, by his wrongful act, neglect or default, may have caused the death of another person, and it is oftentimes expediént that the wrongdoer in such cases should be answerable in damages,” &c. The whole current of authority in this country tends to the affirmance of the same doctrine. The case of Carey v. Berkshire Railroad Company (1 Cush., 475), was an action by a wife to recover damages for the loss of her husband. The court held the action could not be sustained. Judge Metcalf says, if these actions can be maintained, it must be upon some established principle of the common law. He said we might expect to find the principle applied in some adjudged case in the English books; but no such can be found, nor the principle stated, in any elementary treatise of approved authority. He refers to the case of Baker v. Bolton (supra), and the principle there announced, “that, in a civil court, the death of a human being cannot be complained of as an injury,” and adds: “ Such, then, we cannot doubt, is the doctrine of the common law, and it is decisive against the maintenance of these actions.” This case is affirmed in Kearney v. Boston and Worcester Railroad Company (9 Cush., 109). And again in Hollenbeck v. *479 Berkshire Railroad Company (id., 480), Chief Justice Shaw says: “It is perfectly well settled, as a rule of the common law, that all rights of action for injury to the person die with the person; and it follows, therefore, if either the plaintiff or defendant should die before judgment, any existing action brought to recover such damage must abate; and if none had been brought by the party injured, none could be commenced by his personal representative. It was the obvious purpose of the statute to reverse this rule of law, to provide that the right of action should survive, as in cases of damage to property, and, of course, be liable to be prosecuted by or against an executor.” In Safford v. Drew (3 Duer, 637), Hoffman, J., says: “In the first place, it is to be noticed that, by the rules of the common law, before the statute, no action could be maintained by personal representatives of a deceased person for loss or damage resulting from his death.” It is unnecessary to refer in detail to the many cases scattered through the books sanctioning this doctrine. There is one other, in this court, which ought not to be omitted. It is that of Quin v. Moore (15 N. Y., 432), in which Comstock, J., delivering the opinion of the court, says: “ For example, in the present case, James Kernes was a minor; his mother was, by law, entitled to his services until he became of age: of these she was deprived by the wrongful or negligent act of the defendants, which destroyed his life.- The common law gave no action for this injury. The statute, possibly with greater justice, declares a different principle, and holds the wrongdoer liable to make compensation.” (See, also, Vandeventer v. N. Y. & N. H. R. R. Co., 27 Barb., 244, and cases there cited; Green v. Hudson River R. R. Co., 28 id., 9; Crowley v. Panama R. R. Co., 30 id., 99.) These authorities conclusively settle the question that, where injuries are inflicted causing the death of the person, all right of action for such injuries dies with the person upon whom they are inflicted. The exceptions are, that a husband may maintain a civil action for an injury to the wife, so far as medical service and funeral expenses were incurred, or a parent for the loss of a child’s service up to the time of its death; but not for the loss of- life. *480 (14 B. Mun., 204.) But this action is not of that character. It is brought by the administrator, under the statute, to enforce a right conferred by the statute. It appeals to no common-law right of action, and rests upon no common-law principle. The cause of action of the plaintiff in this case is not placed upon the ground of any contract made by his intestate with the defendants to carry him safely from Aspinwall to Panama, The cases, therefore, cited (15 How. Pr. R., 128, and 16 id., 8), have no application.
The only remaining question to be considered is, whether action created by and deriving all its vitality from a statute of this State, can be maintained, when the injury was inflicted without the territorial limits of this State. It is in this view of the case an entirely immaterial question whether the injury was caused by the wrongful act, neglect or default of a natural or artificial person, or whether the artificial person was created by the laws of this State, or that of any other State or foreign country. Keeping in view the proposition, which it is deemed has been established, that no such action could have been maintained at the common law, on what principle is it, that for the act of the defendants, committed in New Grenada, they can be made liable, by virtue of the statute of the State of New York, which has no extra territorial vitality, and is of no effect whatever there ? Supposing the defendant was a natural person, and the owner of the Panama Railroad, and had sold to the plaintiff in the city of New York, a ticket for the objects stated in the complaint, and had imposed on him the duties alleged to have been assumed by the defendants, and the injury had happened as in the present case, can it be argued that the defendant would have been liable ? If he could, it would depend on the circumstance, that the duty was assumed in the State of New York, and whatever liabilities attached to the assumption of like duties in this State, to be performed here, by the laws thereof, attached equally to the same duties to be discharged and performed in other States and territories. Supposing the administrator of the intestate had sought to enforce his claims *481 in another State than this, where no statute like ours was in force, he would have to maintain and establish that the statute of this State must be recognized and enforced in the forum which he had sought. Suppose a similar transaction to this had taken place in England, and the person on whom the duty safely to transport, rested, had resided there after the passage of the act of 9 and 10 Victoria, and a similar accident had happened, and the administrator had sought his remedy in the the courts of this State happening to find the party liable under this statute within this State, can it be seriously maintained that by virtue of the act of 9 and 10 Victoria, he could recover here? I suppose clearly not; and these illustrations show that the plaintiff cannot, in this action, recover by virtue of our statute, for injuries which occurred to his intestate, happening where that statute had no force. It is unnecessary to add, that a statute of a State of this Union has no extra territorial effect. And while all transactions occurring here, or liabilities for acts done here, are to be affected and governed by our local law, no such result follows transactions occurring in a different State or territory where those laws are unknown, where they are entirely inoperative, and where different rules applicable to the subject-matter may prevail. Warley v. Cincinnati, Hamilton and Dayton Railroad Company (1 Handy’s R., 481), Campbell v. Rogers (2 id.), Ashley v. White, (2 Smith Leading Oases, 131, note), sustain the principle, that an action arising under a similar statute cannot be maintained where no such statute was in force in the State or territory where the injury was inflicted. In our own State there have been several decisions on this precise point. (Vandeventer v. N. Y. & N. H. R. R. Co., 27 Barb., 244; Whitford v. The Panama R. R. Co. 3 Duer, 67; Crowley v. Panama R. R. Co., 30 Barb., 99; Beach v. Bay State Co., 16 How., 1; S. C., 30 Barb., 433.) The cases in 27 Barbour and 16 Howard are special term decisions, the others were made at general terms. In the case in 3 Duer, the question is very elaborately discussed by Mr. Justice Woodbuff. The reasoning of this very able opinion is, in my judgment, eminently sound and conclusive. The learned *482 judge very truly says: “It will hardly be denied, that the consequences of any act done upon the soil of New Grenada depend upon the laws of that republic. Contracts made and to be performed there, are governed by those laws. An act done there which is lawful there cannot be held illegal anywhere. Acts done or neglects occurring there, if they are justified by the law of that State, are justified everywhere, and if these defendants are not liable there, they are not liable here, for, as is said in Campbell, administrator, v. Rogers (19 Law R, N. S., 329), if there is no right to recover for an alleged injury, in the State where it is said to have been committed, there can be none in any other State. And on the other hand, if the State in which the alleged injury is committed has declared the consequences and defined the Lability therefor, that law must govern. Let it be supposed that New Grenada has by law, or in the grant under which the defend ants act, prescribed the cases in which the defendants should be liable for a death caused by the negligence of their servants and the extent of that liability. It would not, we think, be gravely insisted, that they use their railroad under any other or greater responsibility than is so prescribed.” The same question has undergone an elaborate review in the case of Crowley v. These defendants (30 Barb., 99), at the general term of the seventh district. All the arguments urged on the part of the plaintiff in this case are met and conclusively answered there.
In reference to the argument, that it was the intention of the legislature that the statutes of 1847 and 1849 should have an extra-territorial force, the learned Judge who delivered the opinion of the court, says: “ The purpose of the legislature in such cases should be very explicitly declared, if such were the intent of our act. But if these ■ acts follow the citizen out of the State, so as to give a right of action enforceable against any person or corporation of which the courts can get jurisdiction, for wrongs done out of the State, then the acts of any other State or legislature may, upon the same principle, operate throughout the Union or throughout the *483 civilized world, as valid laws, so far as to give a right of action whenever, jurisdiction of the person could be obtained. An act of the legislature of this State would thus practically become universal public law. I think this cannot be the intent or force of these acts. They are purely heal, and limited to the sovereignty and domain of the State, and only apply where the subject-matter of the action arose within this State.” In Beach v. Bay State Company (30 Barb., 433), the general term in the first district had under consideration the question presented for our determination in this case. It arrived at the conclusion that the action given by the statutes of 1847 and 1849 could not be maintained where the injuries were inflicted without this State. Sutherland, J., says: “There is nothing in the acts of 1847 and 1849 which shows that - they were intended to protect the lives of its citizens while out of the State; — nothing to show that they were intended to extend to acts, neglects or defaults, committed "or suffered in another State. It must be presumed, I think, as the result of the general principle of the territorial limit of political j urisdiction, and of the force of laws, before adverted to, that these statutes were intended to regulate the conduct of corporations, their agents, engineers, &c., and of other persons, whilst operating or being in this State only. If a citizen of this State leaves it and goes into another State, he is left to the protection of the law of the latter State.”
Again it is to be observed, that the third section of the act of 1849 is highly penal. It denounces as a crime and punishes by imprisonment and fine, the same wrongful acts, neglects or defaults, for which an action is given by the first section. Can it be for a moment argued that the servants of the defendants could be indicted and punished in this State for the wrongful act, neglect or default, by which the plaintiff’s intestate" lost his life ? Criminal actions and proceedings are strictly local, and to subject an offender to punishment the crime must be committed within the limits of the sovereignty seeking to punish the offense. This view of the subject furnishes, in my judgment, a conclusive answer to the claim, that the party *484 guilty of the wrongful act, neglect or default, without the territorial limits of this State, can, under these statutes, be called to an account in our courts, either civiliter or criminaliter.
The judgment of the Superior Court should be affirmed, with costs.
Selden, Lott, Mason and James, Js., were also for affirmance; Comstock, Ch. J., dissented, referring for the grounds to his opinion in the case of Dibble v. The New York & Erie Railroad, argued at the same term, and in which a reargument was ordered, the judges being equally divided. That opinion was as follows:
Comstock, Ch. J.
I think this case is a very plain one. The intestate was injured in his person through the negligence of the defendants. Six weeks after the accident, he received and acknowledged a full satisfaction of the wrong. The settlement which he made is not impeached or questioned for fraud, mistake, or upon any ground whatever. About a month afterwards he died, as the jury have found, in consequence of the injuries, and his personal representative now seeks a new compensation, to be distributed according to the rules of law relating to intestates’ effects. This claim appears to me altogether without foundation.
At the common law the rule was understood to be, that purely personal wrongs died with the person who received them. This rule was, perhaps, not founded in any just-or enlightened policy. It was, at all events, unsuited to the condition of society in this age, when railroads and steamboats have become the carriers for hire of vast numbers of human beings, exposing life to frequent and numerous casualties. If the carrier neglects the means of safe transportation, and the passenger is injured thereby, but survives the injury, his right to compensation is plain, without the aid of legislation; and the amount of such compensation will become a part of his estate. If he afterwards dies in the course of nature, the *485 indemnity which he has received will be subject, like any other estate which belonged to him, to distribution according to law. But if he dies without receiving such indemnity, or recovering a judgment therefor, the common law has provided no successor to the right; and the compensation due to the injured party in his lifetime becomes lost to his estate. This being manifestly unjust, the legislative power has intervened in many of the States, and in the parent country, to correct the evil. Legislation of this kind, although suggested by the exposures and accidents attending the new modes of travel which I have mentioned, is, nevertheless, general in its application, and is founded in a principle of universal justice.
But this legislation, with us, however it may be elsewhere, is remedial, and not creative. It adds no new definition to the category of actionable injuries, but it provides that immunity to the offender shall no longer be the consequence of the death of him who is injured, if such death be occasioned by the wrongful act or neglect. No new cause of action is created by the legislature; but the cause which, by the rules of the common law, has become lapsed or lost by the decease of the person to whom it belonged, is continued and devolved upon his administrator, who takes it by representation, as he takes other personal estate and rights of the decedent.
This is the conclusion suggested by a view of the evil or injustice which required a remedy; and it is fortified by the terms of the legislative act under which this action was brought. (Laws of 1847, p. 575, ch. 450.) That statute declares, in its first section, that, “ whenever the death of a person shall be caused by the wrongful act, &c., and the act, &c., is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwilhstandiny the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony.” This language plainly points to the wrongful act or *486 neglect as the cause of the action; and death is regarded as the incident or consequence of the wrong. Damages are declared to be recoverable, not for the killing, but notwithstanding, or in spite of, the death which ensues. The statute recognizes but one cause of suit, and that is, the wrong done, irrespective of its consequence. The injured party may be maimed for life, or he may die in a moment, or in a year, as the result of the injury. These are circumstances which may well influence the amount of compensation to be claimed; but the statute declares the wrongful act, dec., and that only, to be the foundation of the suit. The common law afforded no civil remedy after the death of the party. The statute supplies that remedy, by allowing his representative to maintain the action..
The opposing argument is founded wholly on the idea that the cause of suit by the administrator is the death of the party, and not the wrongful assault or negligent conduct by which it is occasioned. The second section of the act is referred to in support of this theory. But that section begins by declaring that “ every such action shall be brought by and in the names of the personal representatives of the deceased person.” What follows, relates to the damages and the distribution thereof. How, the action here spoken of is precisely the one authorized in the previous section; which is founded distinctly on some wrong or negligence for which the injured party himself might sue. Again, the redress must be sought in the name of his representative. In the view of the statixte, therefore, the right to be enforced is not an original one, springing into existence from the death of the intestate, but is one having, a previous existence, with the incident of survivorship, derived' from the statute itself. The death may be sudden: in common language, instantaneous. But in every fatal casualty there must be a conceivable point of time, however minute, between the violence and the total extinction of, life. That period may be a year, or it may be less than the shortest known division of time. During its continuance the right of compensation for the wrong belongs to the victim, and it is capable of devolu *487 tion, like other rights, upon his representative. This is the theory of the statute, unless its language is strangely chosen to express the purpose intended.
It is said, however, that according to the 2d section, damages may be given by the jury with reference to the pecuniary loss to the wife and next of kin, resulting from the death of the injured person. This is true, but it has no tendency to shów that the death is the original cause of the suit. The death is the consequence of the wrong, and like any other consequence it may have a just bearing upon the question of damages. In the contemplation of the statute, the life of the person wronged has a greater or less value to his estate, and if his life be taken away, the amount of the loss from that cause is one of the items, and if the death be sudden it may be the chief or only item to be considered in adjusting the compensation.
The true point of inquiry is, whether a wrong of this nature resulting in death affords more than a single cause of action. If it does not then the proposition becomes too plain for argument, that the right is wholly vested in the injured party until he dies, whether he survives the casualty a moment or a month; and consequently he may deal with such right In any manner he pleases.
Now, to affirm that, in cases of this nature, two causes of suit arise, one in favor of the decedent in his lifetime, the other founded on his death, is to depart from the plainest legal analogies. An assault and battery resulting in death, is a case precisely within the statute, and we may take it as an illustration. The injured plaintiff bringing his action at the common law, must recover entire damages because the tort is single and indivisible. After one trial and recovery no new development of injury or damage will justify another suit. So ‘if one satisfaction is received, another cannot be claimed on the ground that new consequential results of the wrong have appeared, which were unknown at the time when the satisfaction was accepted. The principle is well illustrated in an early reported case, where a piece of the plaintiff’s skull came out, *488 in consequence of a battery, after a trial and recovery had been had. It was held that no second action would lie. We may suppose then that death ensues as the foreseen consequence after the wrong has been satisfied or has passed into judgment against the offender. It would be competent, doubtless, for legislative power to define this as a new and distinct cause of action, which ought to go to the increase of the decedent's estate; but the departure from the logic and the analogies of the law would be so manifest that the intention ought to be expressed in very unambiguous terms.
Against such a construction of the act in question may be urged not only its language, upon which I have commented, but the consequences, which must involve the administration of justice "under the statute in great absurdities. We may suppose a case where a plaintiff has been crippled for life, in a railroad collision, and brings his action at the common law, and that on the trial it appears from the medical testimony that for the remainder of his days he must be a burden instead of a benefit to his estate. It is plain that the damages in such a case must be awarded upon grounds which necessarily include the claims of his representative under the statute, if death had been the immediate result of the injury. And yet, upon the doctrine contended for, if the plaintiff should die after such a recovery, in a new action a jury might award $5,000 more. This would be a double satisfaction not only for a single tort but without any new development of loss or damage. I have in mind a case where the injured plaintiff recovered a verdict of $14,000, against a railroad company. If he had afterwards died of the injury another verdict might, under the statute of 1847, have been rendered in the suit of his representative.
Again, we may suppose that the person injured, without bringing suit, lingers in pain and suffering for a year, and dies, and that, during all that period, he has not only been unable to attend to his business affairs, but has incurred great expense for medical care and attendance. All these circumstances would be considered in estimating the damages to which the party was entitled in his lifetime. If such damages were paid *489 to or recovered by him, those entitled in succession after his death would take the benefit. But, not being paid or recovered, they are forever lost, if the proposition contended for in this case is sound. That proposition is, that the action of the representative in such cases is founded on the death as a cause of suit, distinct from the compensation which the injured person has a right in his lifetime to claim. But the statute says that the damages may be recovered, not for the death, but “ notwithstanding the death.” The legislature thought it unjust that the wrongdoer should allege that the injury inflicted by him was fatal, in other words the highest possible aggravation of the wrong, in bar of the claim for damages. They, therefore, changed the rule of the common law by providing that the damages should go to the representative for the benefit of the wife and next of kin. My conclusion is, that the claim of the decedent, in his lifetime, under the statute always vests in the representative. Some remarks of mine in Quin v. Moore (15 N. Y., 435), may be in opposition to this view. But they were unnecessary to the decision of that case, and were not well considered.
It may be urged that the party, while living, can never recover a compensation for his own death by a verdict rendered in his lifetime. In mere words, this is a plausible statement. But, in a legal point of view, the difficulty does not exist. Every suit to recover damages is brought, in a just sense, for the benefit of the plaintiff’s estate. On the trial of an action for a personal injury, it may appear that death must afterwards ensue as the result of the wrong. Medical science may easily demonstrate the fact. Or, it may appear to be doubtful whether the plaintiff will be a helpless cripple while he lives, and die in the course of nature; or whether he must die from his injuries within a few days. Upon a doubt of that kind, would it be proper to instruct a jury to mitigate the damages in case they believed that death must ensue ? Plainly this cannot be so. It was never heard that an assault and battery, or other tort to the person, was of less consequence in the eye of the law because it is attended with such force and *490 violence that the life of the victim is shortened. The aggravation of the circumstances cannot be urged in mitigation of the loss or of the punishment which the law metes out to the offender.
The analogies of the law require, as I have said, that éntire compensation for all the consequences for a single wrong must be given by a single verdict. Those consequences may have been experienced at the time of the trial, or they may be prospective. If prospective, they are to be ascertained as well as they can be from the nature and severity of the injury inflicted. Some infirmity will always attend the administration of justice, arising out of uncertainty in the facts to be considered. But the principle here stated is elementary and familiar. If a parent brings the action for an injury to his child, the loss of service, both past and future, will enter into the question of damages. The future loss may result from the child’s death, an event which the evidence may show will be the probable result of the wrong. The evidence must determine the fact to the satisfaction of the jury. The principle of compensation will not change, as the evidence may shift, on this point. The loss of service may result from inability to labor or from death, and it is not material which. In such cases, doubtless, two actions may be brought without the circumstance of death. ' The child may recover for the personal wrong and" suffering; the parent for the consequential loss of service. If death results, both these causes of suit may, or may not, be united in the administrator. On principle, I should say that the action of the parent, for the consequential loss of said service, is not affected by the death of his child or servant. However that may be, it is" plain that there is only one cause of action when the person injured owes no service to any one else. This is conceded to be true while he lives, and I think it equally true after his death. It is true the statute says “ the jury may give such damages as they shall deem fair and just, resulting from the pecuniary injury resulting from such death.” This would be so without the statutory declaration. The statute was only required to create a survivorship of the cause *491 of action: that being established, all the circumstances attending and resulting from the wrong would enter into the measure of damages; and where there is but one cause of action in the lifetime of the party, I think that the action by his represen tative is not only for the same wrong, but that the damages to be recovered are determined according to the same principles and facts. Such a wrong, therefore, admits of but one satisfac tion, which was had in the present case before the suit was brought.
Hoyt, J., also dissented.
Judgment affirmed.